The first case today is No. 23-1721, United States v. Lisa Sirois, and No. 23-1723, United States v. Lucas Sirois. At this time, would Counsel for the Appellant, Lucas Sirois, please come to the podium and introduce himself on the record to begin. Good morning, Your Honors. Tim Parlatory. Do you mind just moving your mic a little higher? Sure. There you go. That's great. Tim Parlatory for Lucas Sirois. And with Your Honors' permission, I'd like to reserve two minutes for rebuttal. You may. This is an interesting case where it's not really in dispute that the district court applied the wrong standard. The government didn't really even address it in their reply brief. The district court ruled that the government had a good-faith basis to proceed, although this court, in the Bilodeau decision, held that the standard is actually weathered a defendant in a substantial plan. Insofar as you're focused on the standard of proof issue, as the district court articulated, the government does say that not only did you not raise this point below, but you invited the error by agreeing to the framework the district court had adopted. What's your response to that? The government's doing that in the context of a substantial evidence versus preponderance standard, which is not what our argument on appeal is. The argument on appeal is that the standard is, as this court laid out, substantial compliance with state law, not the government having a good-faith basis to proceed. There was no way to possibly preserve that because we didn't see that until the judge ruled. The very first thing we did upon finding that the judge applied that standard, as opposed to substantial compliance, was we filed a Let me just ask it this way. Suppose the record shows, by a preponderance, because this is, I think, the thrust of the government's response on this point, if it shows by a preponderance that there was not substantial compliance, or you can't meet the burden under the preponderance standard as to whether there was substantial compliance, what then? In that case, if the record shows by a preponderance of the evidence that there was not substantial compliance, then the motion should be denied. You can't show by a preponderance that there was substantial compliance. Correct. Then, in that case, the injunction should be denied. So unless my colleagues want to spend more time on the framework that was used below, the government is arguing here that on this record, that burden can't be met here, even under the standard you just articulated. So I would like to make sure we get to discuss that. Yes, they are, and I would just note that there were no findings of fact by the district court on that issue. Correct, and their contention is, I take it, just on one point on this, and you may disagree with this, so if you do, I want to understand why. They say, with respect to that question, there was never an articulation below, even though Bilodeau was on the books, that that is what had to be, that was the thing that should have been at issue in the proceeding below. Therefore, we're on plain error as to whether that has been shown here, and therefore, you have to show that you were prejudiced by the district court not having made those findings, which they say you can't do in light of what the record shows. What's the response to that? So our arguments throughout this case, in our written motion papers, in our oral argument, the opening statement, our closing argument has always been closely, you know, going to the Bilodeau standard of substantial compliance. I understand on substantial compliance, but with respect to the preponderance with respect to substantial compliance, that argument was not made to the district court. As far as the preponderance versus substantial evidence, that was not something that, that's not part of. So the fact that there's not a finding on preponderance as to substantial compliance is not a consequence of any reason other than it was not said to the district court, you must make that finding. That's why I understand that the government says we're on plain error with respect to that aspect of the question. No, Your Honor. Our position is that the reason why that finding was not made was because the district court applied the wrong standard. They were looking to, you know, more of an administrative review of their decision-making as opposed to what this court laid down, which is was there substantial compliance or not. And our position is that throughout that three-day hearing, we made very clear that there was substantial compliance. You know, we presented evidence from the state that the state found. And did you say to the district court with respect to whether there was or not, the relevant question is by a preponderance, can we show there was? I don't recall if I used the word preponderance, but that certainly is. Well, that's the key finding that you're saying is missing. So if that wasn't raised below, then we'd be on plain error with respect to that question, wouldn't we be? I would have to go back and look at my written summation to see whether I used the word preponderance. But our argument was and has always been that the evidence has shown that they were in substantial compliance. Counsel, let me ask you, you agree, right, that it's your burden under Bilodeau to show substantial compliance in order to get an injunction? So let me ask you this question. Is it correct, as the government argues on page 57 of its brief, that below you didn't introduce any evidence showing the sale of any amount of marijuana to any bona fide patient by any caregiver at the shoe shop? Is that correct? So it is true that we didn't present specific sales records. However, what we did do, which we did in our motion papers, was the state had conducted an investigation. We presented to the court the results of the state's investigation, which found no noncompliance. But was the state investigating that specific question of whether, in fact, there were records of sales to bona fide patients? So the state does review all the records. And in this case, what our clients did was a lot of the sales were in accordance with main state law, wholesale sales as well, sales to dispensaries. I understand that. I understand you're allowed to sell to dispensaries, entities other than patients. Correct. But again, on this very specific question, the government says you can't be in substantial compliance if you couldn't show records of sales to bona fide patients. The government misunderstands main law. There is no requirement to show sales to patients. The requirement is that 75% of the plant can be wholesale. There is nothing within that that says what has to be done with the other 25% or even how that 25% is calculated. And, you know, one of the reasons why the state of Maine has since amended the law to make it 100% is that one way of calculating that, the leaves and the flowers can be sold and the stock, which accounts for more than 25% of the weight. So are you arguing that at the time of the hearing and based on the law that was in effect then, not now, it was not a requirement of Maine law that 25% be sold to bona fide patients? That's correct. It wasn't a requirement at the time. It isn't a requirement now. That's a requirement that the government tried to read in to Maine state law that never existed. There are two other pieces on this. One is it is a requirement of Maine law that you not be a collective, correct? Yes. And they have evidence that they point to of a number of witnesses at the hearing who testified as evidence showing you to be a collective. What in the record contradicts any of that evidence? So, Your Honor, what they've presented is they presented a theory of a collective, but they have not shown any proof of it. The collective is defined in the Maine state law as all these caregivers getting together and doing everything for the benefit of one another. And it doesn't very clearly define what that is, how it is. It does give examples of what it is not. And yet the government's theory contradicts that because they're not saying that it's a bunch of growers coming together for the good of everybody. They're saying it's a bunch of people that are coming together for the good of Luke Soroy. Well, but they all benefit from Luke Soroy helping them by funneling the money back to them and providing them the facility. So that's the mutuality. And providing them the facility and doing all the mutual spaces and everything else is something that is specifically permitted under the Maine law. This is his business structure. But it's both aspects. So I guess, put it this way, if we took as true the testimony from the witnesses, which they rely on to show it's a collective, is your contention their testimony itself does not suffice to show it's a collective? Correct. Correct. Their testimony, if accepted, given the other credibility issues, still does not establish a collective. And if there was a collective, that's something... And when you say does not establish that, given that you have the burden, you can show that it is more likely than not that it is not a collective. You're asking to prove a negative, but the way... Well, I'm not asking to prove anything. That's what Bilodeau says you have to prove. The manner in which this business structure was set up is something that was presented to the state. That's a separate question. Right. Now, just on the basis of the testimony of the witnesses, are you saying if we had only that in the record, you would be able to have met your burden to prove that it is more likely than not that it is not a collective? Yes, Your Honor, because a conclusion by a witness that it is a collective that's not supported by specific facts... But they testified to specific facts about how the thing was organized. Yes, but the specific facts don't establish a collective. That's not what a collective... Your point really is that the government has all of Maine law wrong, so all of their facts are largely irrelevant. Is that essentially what you're arguing? It's a little bit extreme. You can keep going. It's a little bit extreme to say that they have all of it wrong, but they do have a lot of it wrong. And it is something that, you know, it should be decided... What's wrong with respect to the testimony about the collective that the witnesses gave that suffices to show it was not a collective? Because that's not the definition of a collective. And it is... What do you say to that? What they presented is not the definition of a collective. What they presented was evidence of a unique business structure of a landlord-tenant relationship that is something that was... But showed more than just landlord-tenant. It showed that there was the sharing of profits and that the money went back to him and then he distributed it back to them. It showed that they wholesale to him and that he, you know, paid them for the wholesale product while deducting their expenses. It's not that much different. I would liken it more to almost a franchise relationship than a collective. But the way that this was set up on the advice of counsel is not something... I got it. Second thing was on the Lakemont business. Yes. They have evidence that shows the entirety of that time the co-owner of the business was not a registered or licensed caregiver. Is that correct? That is correct. In your briefing, I didn't quite understand what your response to that aspect of the evidence was. There's no prohibition under Maine State law that says that the only shareholder may be a licensed caregiver. It does say that they can operate under any business structure authorized by the state. It does say that a licensed caregiver may receive profits. But it does not have that similar prohibition to like, you know, for lawyers of thou shalt not share the profits. That is something that, you know, the government has read additional things into the statute that don't exist. But he's doing more than sharing the profits. We're running the business together. But that business did more than just caregiver business. It also did, you know, maintenance of the building. It did all of the information. And can you show that the other person, it is more likely not that the other person only did those other things? Yes. He was a partner in those things. He did not participate in these specific sales. And the record shows it's more likely than not that he did not? It was not something that ever was brought... Well, the burden's on you to show that. It is, but it's not something that was really even brought up. You know, part of the problem here is that the burden is on me to show substantial compliance with state law. We did that in our initial moving papers by providing the paperwork from the state of Maine that it inspected this, that it looked at all this and said, you know, no noncompliance. But with respect to that, that's a separate piece of your case, which I understand. Yes. My understanding is the government's response to that is that the evidence they're relying on to make the case that you can't show that it's more likely than not that you were in substantial compliance is evidence that those state inspectors did not have. Yes, Your Honor. So what is that? Is there something in the evidence that shows actually inspectors did have it? I suppose what I'm proposing here is, you know, somewhat of a burden shifting where we can't make an initial showing on every single theory that we're not even aware of. And so we presented evidence. But once they put it in at the hearing, you could then rebut it, right? Correct. And did you? That was not something that really came up at the hearing. Well, there was testimony, I thought, at the hearing that the inspectors didn't have that information. There was testimony at the hearing, you know, that there was a partner in this business, but there was nothing presented. There was testimony about when that information was learned by the feds. And the contention was the state inspectors had not learned that information. Was there anything to contradict that? There was no state inspector to come in and say, I didn't know that. The feds are claiming things without any evidence whatsoever. And this is part of the problem is that we presented evidence of compliance. They're trying to rebut that by putting things in that they had no evidence of. You know, for example, and we've discussed this extensively in our reply brief about the state making a criminal referral, which is something that is totally invented. They're putting all these things in to try to rebut the idea of substantial compliance. And it's kind of like a whack-a-mole situation where every time they come up with a new theory of, oh, well, there's a partner in the business who's not licensed, well, there's no statute saying that you can't do that. There's no law that says that's improper. And at a minimum, considering that this court rejected strict compliance and adopted a substantial compliance standard, if there is, you know, some ambiguity in main state law as to whether you're allowed to have that partner. Any further questions? Yes, I have a couple of questions. It's a little different area, so I don't want to interrupt. But my concern here is the United States government obtained an indictment. There's the standards. You need to have parole cause. And it's an indictment not for main controlled substance laws or medicinal marijuana sales, but it's for basically the sale of marijuana in the black market. And that, unless Congress has amended that this week, which I doubt, is still legal federally. So my question is, what precludes, because it would not seem, it seems to me that the Rohrabacher Far Amendment does not preclude, you know, what it does preclude is, for example, the United States from, like, let me see all your papers to see if you're complying with main marijuana law. I understand that's what the amendment tells DOJ, don't spend money or funds doing that, or prosecutor investigating. But here, that's not real investigation. It's for black market sales. So my question is, what, you know, how does this amendment operate to basically totally bar the United States from prosecuting an otherwise prosecutable drug offense? Because there are allegations of sales in the black market, not necessarily, you know, you have issues, oh, does this violate main law or it's not black market? But to me, those are factual issues that wouldn't necessarily probably go to jury. But once there's probable cause or indictment, what would, you know, you're asking us to basically dismiss the indictment, correct? Yes, Your Honor. Well, to issue an injunction. But that's, you're hitting on a very important point there. Because to the extent that they actually have evidence of my client's involvement in black market sales, if they indicted just that, we wouldn't be having this argument. But what they're saying is that because of all these other things, instead of just prosecuting, you know, whatever weight they claim is part of black market sales, they're prosecuting the entirety of everything. So that if there's noncompliance, their theory is. And that's why you say this is different than Bilodeau.  Yeah. Correct. In Bilodeau, it was. Everything was the thing that you're saying is the black market sales. Correct. Although I guess here you're also contesting whether there's a basis for the black market sales because you say there wasn't evidence of his knowledge. Correct. In this case, their theory is that a small percentage of the product did go onto the black market and the evidence demonstrated that Mr. Soroya was not involved in that, didn't know about it, which in theory, you know, were there not this amendment, those could go to jury questions. But they're using that to then prosecute the entirety of the things that are also legal under state law. We didn't have that issue in Bilodeau. Correct. That issue was not. I say this as a practical matter. I preside over many criminal trials, federal criminal trials. If that is the issue, that is something to me you would bring. If you're the attorney, I'm the district judge. You bring to me a trial, motion in limine, motion in limine for this and that. And as a judge, I would probably, you know, I'm not saying this is what has to be done in this case, but I've narrowed the issues that can be presented. I guess a government can't present this and that. It's limited to the black market sales. So you have a lot of options that are available during a trial. So, again, my question goes, why should we enjoin this prosecution? The reason why this prosecution should be enjoined is that our position is that the evidence has shown that everything that our client was involved in was in substantial compliance. And the fact that certain sales were made to an individual who held himself out to be a legal business but was actually lying and turned out to later sell it on the black market is not something that our client should have to go through the entire trial process. I guess that's not quite responsive to Judge Halpy's question. And what you're saying, that could be the answer in probably any other criminal prosecution. You're trying to stop a prosecution before it even gets to the jury or, you know, maybe there's a suppression issue or other issues. But basically what you have is an indictment and then you're trying to. I could. I would concede, Your Honor, that it would be reasonable to potentially cut it in half and say all of this stuff, this part of the legal business is enjoined. That's not the question Judge Halpy is asking. He's asking if there were a reason to cut it off, why wouldn't the right answer be not to cut it off, deny the injunction and allow the prosecution to go forward. And if you wanted to make a motion to eliminate as to the way they then prosecute it and what the jury instructions would say or something like that, that's how to handle it. What's your answer to that? I can see that point. However, ultimately what that requires is the government, instead of bringing a limited case, they're going to expend significantly more funding to bring a much more expansive case to include all of the conduct that Congress has specifically told them to stay hands-off on. So you think we have to get the injunction out. My last question, I know we're over, but there's a zillion issues in this case. As a jurisdictional matter, I understand in Bilodeau we described it as an injunction. So I understand why you're saying what you're seeking is an injunction. It's also the case it's fairly unusual to get an injunction of a criminal prosecution. Yes. What is the source of the authority for that injunction? The rider is not a cause of action in itself. It's not evident to me what the waiver, whether it's sovereign immunity, how you get around sovereign immunity, et cetera. And there is some case law about when there is authority for an injunction to enjoin a criminal prosecution, which it's not evident to me this applies to. Do you have any thoughts on that question? Because I was following Bilodeau and the other cases, I hadn't really gotten deep into it, but my understanding is that it's essentially the federal rules of civil procedure injunction for where there is. But for an injunction, you have to technically file a civil action to enjoin the criminal prosecution, and then you usually see this trying to enjoin a state case, the Younger v. Harris abstention, and that also applies. You try to enjoin, it's very, very hard. Usually courts will abstain from enjoining state prosecutions. And let me say, I did the research on how many state cases actually have been enjoined over the years. I do recall maybe one or two. One was Harry Connick Sr. in New Orleans, who is a state attorney. But it's very, very rare. And then you're asking us to enjoin a federal prosecution, and you've done it within a criminal case. So that's kind of like following Chief Judge Barron's questions. How do you get the jurisdiction to come here with an injunction? And I know you're following the case. I actually did think about following that separate civil case, but following the ruling in Bilodeau, I figured. Because the other way to understand Bilodeau is although it says it's an injunction, whether it's really just a collateral order doctrine. If it is a collateral order doctrine, though, we under Joseph suggested under, I think it's Midland, that it's very rare you can get an interlocutory appeal in a criminal case. And it's not evident to me this fits with under the standards that we set forth in Joseph, which is post-Bilodeau. So I'm just not entirely sure what the jurisdictional basis is here. Like I said, Your Honor. Don't blame you. Blame me. I follow Bilodeau. I pulled the filings from that one and said let me just do it the same way and just have better facts.  Any further questions? Thank you. Thank you. Thank you, counsel. At this time of counsel for the appellant, Elisa Soroy, would please introduce herself on the record to begin. Good morning, ladies and gentlemen of this honorable court. My name is Ronald Borget, attorney from Augusta, Maine, and I represent Appellant Elisa Soroy. Our position is that the evidence in the injunction proceeding was met by our client, Elisa Soroy, by preponderance of the evidence. And the issue is whether or not we had a burden to go forward with witnesses and exhibits. But because the state's expert testimony, as presented by the government, was so weak with regard to Okay, but if it's weak, that's a matter for the jury to discredit the testimony. Wouldn't you agree? No. Shouldn't you go to trial? No, I don't agree, your honor. And I think that that is the misconception that happened with this hearing, is that it turns it into a sufficiency of the evidence type thing, which was mentioned by the honorable court, and not looked at correctly with regard to the state law and the implementation of the state's marijuana law, where the implementation is done by the actual director. So when you're doing the implementation, are you looking at only what the government official says, or are you looking at the full, let's call it the treatment team? Because in Maine, the treatment teams tend to include the patient, okay? And in this case, those things were offered in exhibits. So I'm asking the court, and I ask the lower court, not to quite look at the focus, as is presented here, as been well presented, but to look at it from a different direction, that of the estranged wife, who is a treating provider and also a documented person. So that's why we started with the exhibits first. You mentioned the estranged wife. That is an issue, and to me that goes to, like, a defense saying, even let's assume Lucas was doing these black market sales. I'm estranged. I was part of the whole legal business, but I'm totally estranged. But there is an indictment against her. There's parole cause, and there's violation of the federal law, as I mentioned to your brother counsel. You know, whether she's estranged or not or knows or doesn't know, that goes to her mens rea, to eventual finding of guilt beyond reasonable doubt. But why should that be considered now, that she's estranged at this level? It came out at the hearing. It came out at the hearing as well. The witnesses had said that, in fact, she was estranged. So I'm only using it in the context of the enjoyment. But being estranged is not, per se, a legal defense. It may be a factual defense, but, again, it goes to the merits. I'm really asking this court, and I knew I had a short period of time, to look at this case completely different than the rhetoric that the Honorable Chief Judge is talking about and him and look at it more at the exhibits we put in because the exhibits we put in are clearly sufficient when you take it along with the state of Maine's director. Let me just ask you, just so I understand what the force of what you're saying is. You put in evidence that she had a license to be a caregiver. Correct. So threshold point, all indications are she's acting lawfully. If you're trying to indict her for her sales and activity in that respect, Warbacher-Farr bars it because under Bilodeau there's no basis for doing it, right? But not only that. Okay, then second, insofar as they're saying that she was participating in the black market sales, you say there's nothing in the record that could support that, and you've met your burden to show that it's more likely than not that she was not engaged in those sales. Right. But on your first point, we also have a law that's a lot different than Bilodeau because the state is saying that they're the ones that are supposed to be the primary. No, I understand. I get that point. Exhibit four that says that they're to protect the person. Yeah, I got that. And that somehow they're outside the protection. Plus they also say that that protection is, you know, all-encompassing. And then last point, I understand the government to be saying even as to your client, the record that they put forward shows she was part of the collective and in on what Lakemont was doing, which had as its co-founder, a person who shouldn't have been in the business, on their view, and that that is enough to make the case that she doesn't get the protection of Maine law such that enforcing the federal drug laws against her, therefore, is not barred by Rohrbacher-Farr. That's what they're saying. And then your answer to that is you can show by preponderance of evidence, more likely than not that she was not in on the collective or in on Lakemont's alleged activity. How? What in the record shows that? Well, we show there was no evidence of it. But what I'm saying that the enjoyment factor is, is that it's not quite that. It's that she complied with the director of the state's position and was denied the right to a hearing when once presented to her because the federal government interfered with the implementation of the presentation by stepping in. Thank you. And they did not have the right to step in when someone didn't know. And also, this is someone that should have had notice when they're dealing with another person. Sir, I got it. We're past time. Thanks. Any further questions from either of my colleagues? That's my answer. I appreciate it. I appreciate it. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the Appellee of the United States please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, Benjamin Block of the United States. With me at counsel table is Assistant U.S. Attorney Noah Falk. I would like to talk about some of the bigger picture topics that the Court raised, but I think it's important to push back at the outset on some of the specific factual and legal assertions that were made by opposing counsel here with respect to our interpretation. Counsel, let me ask you one question. You saw my assessment, again, of how I see that the amendment does not necessarily preclude an investigation for black market legal sales of marijuana, which are still criminal. Are you in agreement with that assessment I made in asking the question to opposing counsel? Yes, it's our position that Borlaug Far does not preclude an investigation or prosecution for black market sales. But what about when the indictment isn't limited to black market sales? I understood the government's position to be that you did have to show that the breadth of what the indictment covers is not barred by Borlaug Far so that a piece of it is the black market sales, but if that's all you showed, you wouldn't have shown enough. Is that correct? As argued to us. Bilodeau sets out four different categories of varying levels of compliance or noncompliance. Full compliance, technical noncompliance, we'll call it substantive noncompliance, and then prosecutable conduct such as black market sales. It says Borlaug Far precludes prosecution for the first two categories. It permits prosecution for black market sales or other violations that are prosecutable under state law, and it left open the question of how to handle substantive noncompliance such as what we have in this case. This case combines both categories three and four. We have ample evidence of black market sales. We have ample evidence of Lucidware's direct involvement in those black market sales. We also have ample evidence of... Okay, I still think I get all that, but you know the question we're asking. Maybe we haven't made it clear, but I don't think that answers the question we're asking. Assuming you have ample evidence of black market sales, given that the indictment is not limited to prosecuting these defendants only for their black market sales, do you have to show more than that evidence in order to defend your ability to go forward on the indictment, given the breadth of what it covers? No. Is there an argument? That argument I didn't see in the brief anywhere. I just saw the argument saying that the full range of conduct all falls into categories that are articulated in Bilodeau as categories that permit you to prosecute under Rohrabacher-Farr, which is a rather different argument. No, that's our position, that all of the conduct that we are prosecuting... So suppose we disagreed with you as to some of that conduct, but agreed with you as to others of that conduct. What should we do? Enjoying part of it? Enjoying all of it and hope for the best following our ruling or what? Well, I think then let's take a step back and look at the bigger picture here, because what Rohrabacher-Farr is intended to do is, or what it says, is that the federal government cannot spend funds in a manner that prevents the state from implementing its medical marijuana regime. And the question really that's being asked is, does it prevent the state from implementing its medical marijuana regime if the federal government prosecutes conduct that are substantive violations of state regulations? And we would say, no, that doesn't prevent the state from... But you're not answering my question still. I apologize. Judge Helpe's question is, in Bilodeau, all of the conduct, we said, was black market sales. Therefore, all of that conduct could be prosecuted without interfering with Maine's regime. We didn't address a case in which some of the conduct is black market sales. Others of the conduct is conducted in ways that may not be in substantial compliance with regulatory requirements of Maine law. In this case, the indictment covers both categories. So the question is, in that circumstance, if we agreed with you that the evidence showed that there was black market sales, do we enjoin only the parts of the prosecution that the indictment covers that are not that, if the evidence doesn't support you as to that, or do we enjoin all of it because any of it could be prosecuted? That's, I think, the question Judge Helpe's asking. What's the answer to that from the government's perspective? And let me add, the district court has the authority of an indictment for XYZ reason doesn't spell an offense. It can dismiss it as a matter of law. So this would be really as a matter of law, not as a matter of fact. But, you know, what would be the remedy? Should we order or, again, this could result perhaps in a remand. Say, Judge Walker, we're remanding the case. Everything that's black market, you know, you can consider it, but you have to determine what is not black market and if it's something that's affecting how Maine regulates, you know, would that be a remedy? And, again, I'm not suggesting this will be the outcome. Well, our position here is that the black market sales are completely intertwined with the enterprise as a whole. The enterprise is not profitable without the black market sales. You can't separate the black market sales from the operation of the collective. Yeah, but the indictment, I understand, the indictment on its face doesn't describe any of the conduct, right? Correct. So that means, in theory, that indictment would permit you to prosecute any sale that any of them engaged in, regardless of whether it was black market or not. The conspiracy could be just sales that have nothing to do with black market. They're just selling marijuana as caregivers. So part of your answer to that is don't worry about that because actually all of the conduct is either black market sales or otherwise outside the protection of Maine law because of the regulatory problems. The question we're trying to ask is does the government have a view as to whether, if you prove the black market sales, the right thing for us to do is say claim for the injunction denied because there's an aspect of the prosecution that can go forward. If there are aspects that can't, deal with that in the criminal prosecution through jury instructions and the like. Or is the government's position, we're not saying that. Maybe one day we'll say it in a different case. We didn't say it here. All we're saying to you is deny the whole injunction because we can show all of it is either black market sales or sales that were conducted out of substantial compliance with Maine law. I think what you're saying is it's the second. Our front line position is that it's the second. Is there a second line position in which you say the other thing? The second line position is if you disagree that. And that's nowhere in your brief as to what we should do if we disagree with that, right? No, because our view is that under Bilodeau, prosecution for conduct that falls outside the state's regulations is prosecution. Let me try and ask it in a more maybe practical way. Let's just say we think he met his burden to show that he was in substantial compliance with the collective rules and you've misunderstood them or your evidence just wasn't persuasive. We think he's actually shown by preponderance of the evidence that was fine and the way he was operating the business was fine. And the only thing we think that he hasn't met by preponderance of the evidence is the black market allegations. What are we supposed to do then? In that scenario, the injunction would be denied. The prosecution moves forward. If this court or the district court believed that certain compliant aspects of the business should not be treated as criminal, then that would be a matter to be dealt with at sentencing in terms of the quantity. Or it could be a Rule 29 matter, correct? At sentencing? Yes, with respect to the- So you'd be able to present evidence to the jury to convict of the non-black market sales to support the conspiracy? Yes, because it would be relevant to the operation of the enterprise. Well, how would we know that the jury in finding the person guilty wouldn't be relying just on that evidence and not the black market sales? Well, that could be handled via jury instruction. Well, the question is, all the time you're spending formulating the jury instructions and the like, are you in those days spending money potentially going forward on a case on evidence that you have no right to go forward with? Well, again, to bring this back to Bilodeau and this question of whether or not substantially compliant behavior is prosecutable, there would have to be a finding from this court that there was substantial compliance with respect to these- Correct. That's what you recommend to ask? That's my hypothetical. And if that's the court's finding and it's sent back to the district court, then perhaps motions in Limine and other restrictions on the evidence- Let me say also, if the case is sent back, and again, the injunction is a lie, you can always, listening to our concerns now, and if you're going to try the case, you could also supersede the indictment and limit it to black market sales. And you might have to bring some background information, but not as part of the substantive accounts, correct? Can I just- the thrust, if this is where you're going, if I follow it, would be I indict you for everything you're doing. On one sale on January 6th, you sold to the black market. The other 5 million pounds of marijuana. Nonetheless, all I do is say, well, there was one sale, so you can go ahead with your prosecution, even though it covers all 5 million pounds. And then if you want to work it out with jury instructions and the like, go ahead. Is that the government's position? Well, I think there would be an argument there that that conduct was substantially compliant. Not the one sale that was a black market sale? The one sale would not be. And that would be enough to deny the injunction on your theory? Even though the indictment covers all of it? That seems unlikely to me. Well, I think we're very far afield from this case and the facts of this case. Because you think all of it is covered? Correct. Okay, so maybe we should just go to the question of substantial compliance beyond the black market sales and what the government's position is in response to what you heard from your opponents as to why the evidence isn't. Did you get all of Maine law wrong? I would start by saying that our interpretation of Maine law here has been guided entirely by the Office of Cannabis Policy and the testimony of Vern Malick, who's the lead regulator for the state of Maine. It is not the government's invention that 25% of harvested yields need to be sold to patients. That is the position of OCP. Did he testify to that specific point? Do you have a record cite for us? I did read his testimony. I just can't recall right now. Yes. On Joint Appendix pages 134 to 135, Malick testified that sales to patients were, quote, a requirement. During the OCP inspections of Soroy's facility, the Soroy's were told to, quote, find some patients because their entirely wholesale operation was inconsistent with Maine law. Malick also testified at page 206 of the Joint Appendix that there was a consensus among market participants that 25% of the sales must be to retail patients. So this is not something that the federal government has invented. A consensus among market participants? You mean not the regulatory body but the caregivers? I think Director Malick views market participants to include the state regulators. This is a collaborative effort, and that was part of his testimony, that their efforts with caregivers is collaborative and based on good faith, where they're trying to offer technical assistance to bring them into compliance. Can you address the other two, the collective and the, is it Cuozino, the co-founder? Cuozino, yes. Cuozino, the other person who runs Lakemont? Let me talk about Mr. Cuozino. Detective Huntley testified at Joint Appendix page 248 that Mr. Cuozino was an active participant in the shoe shop. He pled guilty to conspiracy to distribute marijuana, and as part of the factual proffer for that guilty plea, he admitted to profiting from more than $1 million in black market sales that were directed by Mr. Saroy, and that he personally engaged in limited black market sales. But the thrust of the point, he was the co-owner of Lakemont? He was the co-owner, 50% owner. And how much of the sales covered by the indictment are Lakemont sales? All of them. Everything is a Lakemont sale? Everything is a Lakemont sale. All of the marijuana that was produced at the shoe shop was transferred by the caregivers to Lakemont. And the evidence that it's impermissible to have Cuozino part of Lakemont, as I understand the contention by the opponents, is there's nothing in Maine law that says somebody who's not themselves a caregiver can't be part of the ownership structure of Lakemont if it's selling marijuana. Yes. Mr. Malik testified to this as well, that caregivers are permitted to form a corporate entity, but they must be the sole participant in that entity. That a corporate structure that included a caregiver and a non-caregiver in which the non-caregiver was sharing in marijuana proceeds was contrary to Maine law. And that a corporate structure that involved multiple caregivers would be a collective. And we had both of those here in Narragage Distributors and Lakemont. And now, aside from the testimony that this person gives about Maine law, there's just Maine law itself. Correct. So what does the Maine law state that supports that conclusion in the government's view? The safe harbor for participation in medical marijuana under 17A MRSA 1103-1BA is that only conduct that is expressly authorized by the medical marijuana statute is protected. There is no express authorization for a non-caregiver to participate in a medical marijuana business. So this is a doctrine of exclusion. In their answer about what about employees and the like, you're saying that's different when we're talking about the actual co-owner of the business. Right. The evidence is not that Mr. Cousineau performed maintenance or simply provided other services. He was a direct owner and shareholder profit sharer in the proceeds of the marijuana business. Can I just go back for a minute? You said that all of the sales were Lakemont sales. Is there somewhere in the record you can point us to for support for that? Well, Tanya Krogan testified that all of the plants at the shoe shop belonged to Luke Zeroy, regardless of what caregiver they were assigned to. She testified that all of the marijuana that was grown by all of the caregivers went to Lakemont. The Lakemont services agreement, which Geneva Stratton signed, indicates that Lakemont will take all of the marijuana and then from there resell it and send back funds to the caregivers. Now, of course, here are the funds that the caregivers were receiving for no relation to the actual production on a week-by-week basis. It was a flat salary that they were being paid by Lakemont, which was evidence of the collective. And two last things from me, at least, before I ask you about the jurisdictional issues. On the question of whether the fact that you're running an operation, and I guess for these purposes, and I realize this isn't how you see it, but for these purposes, is otherwise compliant with Maid Law. If the corporate structure of that entity has a non-permissible participant in it, what indicates that's not substantial compliance? The mere fact that one of the corporate owners is not a valid participant. Well, I think that when you're talking about this third category of substantial compliance, it's hard to have a bright line rule. I think there are a lot of indicators in this case as to why the types of non-compliance that... But just on this particular question, why would that be a basis in and of itself to say there's not substantial compliance? That's a core component of Maine's medical marijuana regime, that you have licensed caregivers, and they are the only ones authorized to participate in the program. But what about their assistance? They are also licensed. There are requirements also that their names be submitted to OCP, there are background checks, there are criminal records. But I guess the idea would be something like if the owner of it can be non-licensed, it's pretty core because that's not that different than a sole owner running a whole operation who's unlicensed. Right. Okay. Second thing is on the collectives. Can you just address the points that were made back to you, which I understand I guess have two kinds of arguments they make back. One is Maine officials testified it was not a collective. And then secondly, the testimony that was given as to it being a collective didn't show anything other than it was kind of a wholesale or retail relationship and doesn't support the idea that it was a collective. Right. So with respect to the testimony, Vern Malick testified that the Lakemont Services Agreement between Lakemont and the caregivers was evidence that it was a collective, that the description of the business structure shown in that document was a collective. He also testified that having a business with multiple caregivers as partners was a collective, and that covered narrow gauge distributors. He testified that when you had a circumstance in which one caregiver was basically controlling all of the other caregivers, that was evidence of a collective. And we have that here in spades where Mr. Saroy was directing the strains of marijuana to be grown, the production methods, the harvesting. And then you say that all tracks the Maine law definitions of a collective. Correct. And presumably you say that's a core component of the regime, too, that you can't be operating as a collective. Absolutely. Okay, last thing on facts is Elisa Saroy and what your evidence with respect to her is and why she is not substantially compliant, independent of whatever the evidence shows with respect to her participation in the black market sales. Right. Setting aside the black market, she sold all of her marijuana as a caregiver to Lakemont. She didn't even receive a salary in the same way that the other caregivers did. She shared in the profits of the company itself. She also shared in the profits from the Avon grow. She was responsible at times for paying caregivers. And is the idea that one can then infer she knew all of the qualities of Lakemont that would have made it an illegal entity to be working with? She was participating in the collective. Her actions indicated that she was part of the collective. And in addition to that, she- And my only concern on this piece of it is we don't have a finding, as you concede, by the district court that's more likely than not that she knew all that. So you're relying on basically evidence that supports it. Correct. And that the record would compel the conclusion that they haven't met their burden. Correct. And with respect to that, they say, well, then it depends a lot on what she knew and understood. And given that she was the estranged wife, et cetera, how could we be confident on this record in the absence of a finding that she had all the knowledge that you're saying we could infer? What's the answer to that? Two answers. One, the district court did not require us to provide individualized proof. And I think that makes sense conceptually because with Rohrabacher-Farr, the question is whether the prosecution as a whole prevents- But counsel, don't we have to do an individualized assessment? I'm struggling to understand that argument. We need to understand whether she's-under Bilodeau, whether she's proven by preponderance of the evidence- that she was in substantial compliance. So we have to look at it on an individualized basis, don't we? Yes, yes. And that was going to be my second point. But you don't. We do. In terms of-again, we don't have a burden of proof here. She does. And so the proof that we offered went to the enterprise that also went- But all the evidence is circumstantial with respect to her, right? As to her knowledge. Yes, I suppose it's not circumstantial. And then what they say is, and we've got some evidence to show, she didn't know because of her relationship to Lucas or whoever the other people were. And therefore, in the absence of a finding that she hasn't met her burden, why wouldn't we at least have to vacate a remand and let the district court make that finding if such a finding is required because it didn't seem to think one was? What's the answer to that? Well, I would say two things. One, if you're going to order a remand with respect to her, given the district court's prior ruling that we did not have to offer individualized proof, we would ask that remand to include additional fact-finding and not merely the record as it stands. Two, I think the record here is sufficient to show that she didn't meet her burden. When you had the evidence from the spreadsheets that she was profit-sharing in the illegal sales, when you have the evidence that she was paying other members of the collective, when you have the evidence that all of her marijuana was going to Lakemont, I don't think the fact that she was a licensed caregiver is sufficient under those circumstances to meet her burden. And then the last question, can you address the strangeness of the posture of this whole enterprise here? In terms of jurisdiction, enjoining a criminal prosecution, whether it's better to think of it under the collateral order doctrine because this is not the last version of this type of case that we're likely to see in this court, so it would be helpful to know what the government's view of is essentially what we're doing here. Right. Both the Ninth Circuit in multiple cases and this court in Bilodeau have treated this as essentially a claim for injunctive relief. Which makes it what, a civil action? I don't think the cases discuss it in such technical terms. But we don't really have the option of not doing that, so what's the government's view? Is it a civil action that you're defending against? It'll matter for all kinds of things. What's the time limit for them bringing an appeal from it? I mean, all those types of things are going to matter, how we characterize this thing going forward. Right. I confess I'm in the same position as my brother counsel in not having considered this particular question given the state of the precedent. I think these interlocutory appeals are problematic in a criminal case. There's exceptional delay. There are co-defendants who are left waiting for these issues to be resolved. So perhaps a separate civil action proceeding on a parallel track would be appropriate. But it wasn't filed as such here, right? It was not filed as such here. So really, if it's anything, it's really kind of an order in the criminal case. Yes. Would that mean it would really have to satisfy our collateral order doctrine for criminal appeals? Yes. And does the government have a view as to whether it does? Because that's jurisdictional. We can't avoid that. And under Joseph, I'm not entirely sure it does meet the standard. Well, we made the same jurisdictional argument in Villido that we made here, which is that this does meet the collateral order doctrine requirements because it is separate from the merits. So the government conceded that it does meet the collateral order doctrine test. We did concede that in our jurisdictional statement. But the court obviously has an independent obligation to consider that. And did you address Joseph, which was in that case? That's the case post-Villido, I think, in which we said that the judicial immunity request there did not meet the collateral order doctrine for a criminal appeal. I looked at Joseph. I did not cite it in our jurisdictional statement. Okay. Thank you. Thank you. Thank you, counsel. At this time, the counsel for the appellant, Lucas Roy, would please introduce himself back on the record. He has a two-minute rebuttal. All right. Good morning. I'm Tim Parlatory, again, for Mr. Ciroi. One of the things that counsel was just talking about, these core principles of Maine law, that aren't written down anywhere. And they're not cited in any Maine state court decision. He's essentially, from a notice requirement, he's expecting Mr. Ciroi to follow laws that aren't written, that have only been presented as the opinion of one state official or in one case, as you pointed out. The consensus among market participants, that is not something that really can be the basis of, because you've set up your business structure in accordance with the advice of counsel, with significant discussions with the state, and because somebody disagrees with that, therefore you're subject to a charge of federal drug trafficking for everything that you've done. That's exactly what Bilodeau sought to avoid. Their own witness, Mr. Burgess, testified about all of the efforts that Mr. Ciroi took to be compliant, to engage with legislators, to push for seed-to-sale tracking, to be as compliant as he could possibly be, and to kind of throw all that out because somebody has an opinion that conflicts with his business structure. Just to give an example, on the Cousineau example. Yes. The idea is Cousineau himself could not run Lakemont on his own, correct? Correct. And the idea is that, but Cousineau can get another person to run it with him, share together in all the profits, and the understanding is that's perfectly okay under Maine law? In the full scope of how it was built, Cousineau owned the building, so he can certainly start Lakemont. He can provide space for everybody. He can provide services for everybody. He can provide them supplies. Just so I'm clear, on my example, he's doing everything that the other person is doing, and he has no license. The two of them can own it together, and it's unclear whether under Maine law that's okay? If he's doing the caregiver's job, then that would be a violation for him. And it would be perfectly fine for another person to go into business and share profits together in that company, and the other person wouldn't be doing anything wrong doing that under Maine law? Absolutely. Businesses do that every single day where you have partners that have different responsibilities. No, no, same exact responsibilities. Both are caregivers. One has no license and the other does. Under Maine law, the other person should understand, even though I have the license, the other person doesn't, I can go into business together, we do the exact same things together, we share all the money together, I should understand I'm allowed to do that in my business under Maine law. If the sole purpose of the business is caregiver, that would be problematic. Okay. But if... I got it. I just wanted to clarify. I got it. And that's the problem, is that this business is more expensive. And, you know, when they're trying to, you know... I got it. Thank you. One final point. Going back to what Your Honor asked me earlier, the discovery in this case is over a million pages. The videos would take 13 years to watch. The vast, vast, vast majority of that has to do with the legal side of the business. Were they to have brought an indictment just for the black market sales, we would have tried this thing a year ago and we would not have had any of these issues. But what they've done is to bring this monster case, and this is directly what Congress sought to avoid, sought to tell them not to do, is to bring these incredibly large, expensive cases that are primarily based on conduct that is legal in the state. And that is why the Rohrabacher Fire Amendment and the injunction is appropriate in this case because, you know, Your Honor's example wasn't that far off of, you know, single black market sale and the five million, you know, legitimate sales. Here, we're talking about a very small percentage that he may not have been participating in. Appreciate it. Thank you. Thank you, counsel. That concludes our argument in this case.